UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK CAIN,

     Plaintiff,                   Civil Action No.: 19-11278
                                     Honorable Matthew F. Leitman
v.                               Magistrate Judge Elizabeth A. Stafford

BRIAN RINEHART,

     Defendant.

_____/

**AMENDED REPORT AND RECOMMENDATION
TO GRANT IN PART AND
DENY IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 32]**

## I.    Introduction

In May 2016, Wayne County Officer Brian Rinehart led a five-person

U.S. Marshals Task Force that searched Plaintiff Derrick Cain's home,

looking for Cain's nephew.  ECF No. 1; ECF No. 32-2, PageID.144-145.[1]

In a verified *pro se* complaint, Cain sues Rinehart under 42 U.S.C. § 1983

and Michigan law.  ECF No. 1.[2]  Rinehart moves for summary judgment

---

[1] Cain estimated that seven or eight officers were involved in the incident, but the exact number is not relevant to Rinehart's motion for summary judgment.

[2] The Honorable Matthew F. Leitman referred the case to the undersigned to resolve all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 9.

and briefing is complete.  ECF No. 32; ECF No. 33; ECF No. 34.  The
Court recommends that Rinehart's motion for summary judgment be
granted with respect to Cain's excessive force claim, but that it otherwise
be denied.

## II.   Background

The task force searched Cain's house when trying to execute an
arrest warrant for Cain's nephew, Corey Mathis.  ECF No. 32-3,
PageID.144-145.  Rinehart had searched LEIN, Wayne County Sheriff's
Office, and Wayne County Jail databases, and they showed that Mathis
lived in a house on Glastonbury in Detroit.  *Id*.; ECF No. 32-2; PageID.132-
143.  But Cain alleges that he owned and was the only resident of the
Glastonbury house, and that he had evicted Mathis in 2012.  ECF No. 1,
PageID.2; ECF No. 33, PageID.192-193.  In a declaration, Mathis
corroborates that Cain evicted him and Mathis's mother from the house in
2012 and says, "If I did give the authorities my uncles [*sic*] address it was
because I knew they could not find me there."  ECF No. 32-5.  In May
2016, Mathis was homeless because of his drug addiction.  ECF No. 32-4,
PageID.155; ECF No. 32-5.

For his motion for summary judgment, Rinehart does contest Cain's
factual allegations, including his claim that Mathis did not reside at the

Glastonbury house.  ECF No. 32, PageID.113, n.1.  But Rinehart says that, before the search, he believed that Mathis lived at the Glastonbury house. ECF No. 32-3, PageID.145.  Rinehart also believed that Mathis was unemployed and that he would thus be home in the mornings.  *Id.*

Officer Rinehart and the other task force members thus arrived on a May morning to arrest Mathis at the home on Glastonbury.  After the officers knocked on the door, Cain talked to them from behind his locked screen door.  ECF No. 32-4, PageID.160-161.  Cain told them that he was the owner of the house; that the only other person in the house at the time was his son's friend (Deonte Morris); and that he had evicted Mathis in 2012.  ECF No. 1, PageID.2.; ECF No. 32-4, PageID.158-162.  Morris came forward and Officer Rinehart confirmed that he was not Mathis.  ECF No. 1, PageID.2.  But Rinehart disregarded Cain's assertion that Mathis was not in the house because he had commonly experienced family members falsely denying that the subject of a warrant was in their homes. ECF No. 32-3, PageID.145.  Rinehart told Cain that the task force needed to search the Glastonbury house to look for Mathis, but Cain denied consent.  *Id.*; ECF No. 32-4, PageID.163.  Cain told them, "I know you need a search warrant to search a third-party's home, and I'm the owner of this home."  *Id.*

3

After being urged by other task force members, Officer Rinehart gave the order to tear down Cain's door.  ECF No. 1, PageID.2; ECF No. 32-4, PageID.166-168.  As the officers approached Cain's door with equipment to breach it, Cain stepped outside and told the officers that they would have to go through him.  ECF No. 1, PageID.2; ECF No. 32-4, PageID.166.  Cain acknowledges that he has "a very violent history."  ECF No. 32-4, PageID.176.  He said that police know about his criminal history and are thus afraid of him.  *Id.*  For that reason, and because he believed that officers tend to tackle and rough up people, Cain appears unsurprised that the officers took him down.  *Id.*, PageID.169-170.  Still, Cain said that the take-down was "pretty painful."  *Id.*, PageID.169.  Cain resisted the officers, "fight[ing] for [his] right."  *Id.*, PageID.169, 171.  But it took little time for the officers to handcuff Cain, and they then used "standard procedure," holstering their weapons and lifting him from the ground.  *Id.*, PageID.169-170.

Mathis was not in the Glastonbury house when all the officers, including Rinehart, entered and searched it.  ECF No. 32-4, PageID.174.  The officers then uncuffed Cain and left.  *Id.*  When Cain's requested that the officers tell him their names, Rinehart was the only one to identify himself.  *Id.*  Thus, although Cain's complaint included claims against

4

unknown members of the task force, Rinehart is the only named and served defendant.

Cain alleges that Rinehart violated his Fourth Amendment rights against an unreasonable search and seizure of his body.  ECF No. 1, PageID.3.  Cain also asserts state law claims of assault and battery, false imprisonment and arrest, and intentional infliction of emotional distress.  *Id*. In his motion for summary judgment, Rinehart argues that he is protected by qualified immunity; that he did not violate Cain's Fourth Amendment rights; and that Rinehart did not use excessive force.  ECF No. 32. Rinehart's motion does not address Cain's state law claims.

### III.   Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set

forth specific facts showing a genuine issue for trial. *Id*. at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

Rinehart's motion is premised in part on his claim of qualified immunity.  Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).  In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407-08 (6th Cir. 2007).

The Supreme Court has warned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation and quotation marks omitted).  "The general proposition, for example, that an unreasonable search or seizure violates

6

the Fourth Amendment is of little help in determining whether the violative

nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563

U.S. 731, 742 (2011).  A case need not be directly on point to be clearly

established, but existing precedent must give officials fair warning that the

conduct at issue is unlawful.  *Kisela*, 138 S. Ct. at 1152-53; *see also Taylor*

*v. Riojas*, 141 S. Ct. 52 (2020) (holding that no reasonable officer could

have concluded that conditions of confinement were constitutionally

permissible under the extreme circumstances of the case despite no

precedent with similar facts).

For the reasons below, the Court finds that there are genuine issues

of material fact that foreclose summary judgment on Cain's Fourth

Amendment claims and Rinehart's claim of qualified immunity.

**B.**

The Fourth Amendment prohibits unreasonable searches and

seizures, and requires that warrants be supported by probable cause.  U.S.

Const. amend. IV.  "[T]he physical entry of the home is the chief evil

against which the wording of the Fourth Amendment is directed."  *Payton v.*

*New York*, 445 U.S. 573, 585 (1980) (citations and quotation marks

omitted).  Even so, "an arrest warrant founded on probable cause implicitly

carries with it the limited authority to enter a dwelling in which the suspect

7

lives when there is reason to believe the suspect is within." *Id.* at 603. An arrest warrant against an individual does not allow police to "search all the homes of that individual's friends and acquaintances." *Steagald v. United States*, 451 U.S. 204, 215 (1981). Instead, to constitutionally enter a third party's home, the officers must "[1] have a reasonable belief that the subject of the warrant lives at the place of entry and [2] a reason to believe that the subject of the warrant is inside." *United States v. Lewis*, 676 F. App'x 440, 444 (6th Cir. 2017).

The first prong weighs in Rinehart's favor, as Cain does not dispute that Mathis told law enforcement that he lived at the Glastonbury address. *See* ECF No. 32-2; ECF No. 32-3; ECF No. 32-4, PageID.156; ECF No. 32-5. In *El Bey v. Roop*, the target of the arrest warrant "had previously given law enforcement officers the 1580 Greenlake Drive address as his primary residence." 530 F.3d 407, 409 (6th Cir. 2008). The court held that the target's "first-hand statement" was enough "to create an objectively reasonable belief that he resided there." *Id*. at 416. The same is true here; Mathis's first-hand statements provided Rinehart with an objectively reasonable belief that Mathis lived at the Glastonbury address.

But Rinehart's motion for summary judgment fails under the second prong; he had insufficient evidence to believe that Mathis was in the

Glastonbury house when the task force entered it.  The Sixth Circuit has not decided whether the burden of proof under the second prong is "probable cause" or "reasonable belief."  *Lewis*, 676 F. App'x at 444-45.  In *United States v. Hardin*, the court applied the reasonable belief standard, but the majority said in dicta that it "believe[d] that probable cause is the correct standard and that the Supreme Court in *Payton* did not intend to create, without explanation or elaboration, an entirely new standard of 'reason to believe.'"  539 F.3d 404, 416, n.6 (6th Cir. 2008).

"Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances."  *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006).  Cases finding that officers had a reasonable belief commonly feature "recent, eyewitness evidence connecting the suspect to the residence, and often even conduct by the suspect that demonstrates a tie to the residence."  *Hardin*, 539 F.3d at 421; *see also Lewis*, 676 F. App'x at 445 (reiterating that "reasonable belief" is commonly based on eyewitness evidence or the suspect's conduct).

The *Hardin* court found no reasonable belief because "even assuming that a lesser reasonable-belief standard applies, the officers in this case did not have sufficient evidence to form a reasonable belief that Hardin was present in the apartment."  *Hardin*, 539 F.3d at 416.  The

officers had information from a confidential informant that may have given

them reason to suspect "that Hardin was generally living at this residence,

but they had essentially *no* evidence to indicate that Hardin was *then* inside

the apartment."  *Id*. at 423-24 (emphasis in original).

Citing *Hardin*, the court in *United States v. Mackey* held that law

enforcement did not have a reasonable belief that the defendant was in the

residence during the attempted execution of an arrest warrant.  No.

319CR208TAVHBG7, 2020 WL 8084994 (E.D. Tenn. Nov. 19, 2020),

*adopted in relevant part*, 2021 WL 76728 (E.D. Tenn. Jan. 8, 2021).

Arguing that they had reasonable belief, the officers said that the address

they entered was among three associated with the defendant; that the

officers had seen the defendant once at the address a month before they

tried to execute the warrant; and that a car the officers thought belonged to

the defendant was parked outside the residence.  *Id*. at \*16.  But the

officers had conducted no investigation to confirm that the car belonged to

the defendant.  *Id.* at \*17.  The officers had also not surveilled the property

to determine the time of day the defendant was normally at the house or

whether he was there at the time of the search.  *Id.*  The court thus

concluded "that law enforcement did not have a reasonable belief that [the

defendant] was inside of the residence at the time of the initial entry into the residence." *Id.* at *18.

Rinehart likewise had no evidence to support a reasonable belief that Mathis was at the Glastonbury house at the time of the search. Rinehart reports no surveillance of the house or other efforts to determine whether or when Mathis would be at the house. Instead, Rinehart assumed that Mathis was at the house—and that Cain was lying—because of his general experience "that it was common to find fugitives in the same location as their family relatives" and that family members often falsely deny that the target of a warrant was at home. ECF No. 32-3, PageID.145. Rinehart also assumed that Mathis was unemployed and thus assumed that Mathis would be home during the morning. *Id.* Instead of eyewitness evidence or observations of Mathis's conduct, Rinehart beliefs stemmed from assumptions.

Rinehart contends that *El Bey* supports his claim that he did not violate Cain's Fourth Amendment rights. ECF No. 32, PageID.121. But when citing *El Bey*, Rinehart artfully says that the Sixth Circuit found no Fourth Amendment violation in that case because the officers believed the suspect "*might* be home at that time." *Id.* (emphasis added). As noted, the Constitution requires at least a "reasonable belief" that the suspect is in

residence *at the time* of the search.  *Hardin*, 539 F.3d at 416.  The "key

fact" cited in *El Bey* was that the officers "saw someone whose appearance

generally matched the physical description of the suspect for whom they

were looking" after they knocked on the door.  *El Bey*, 530 F.3d at 418.

This case is also unlike *Lewis*, in which the court found the officers to

have a reasonable belief because they saw the suspect "fleeing from the

apartment only a week prior to his eventual arrest."  676 F. App'x at 445.  In

*United States v. Block*, the agents had several reasons for believing that

the defendant was in the apartment, including that the apartment and a car

outside were tied to the suspect's girlfriend and an agent saw the

defendant in the window after knocking on the door.  378 F. App'x 547, 550

(6th Cir. 2010).

Rinehart cites no precedent supporting his claim that his general

experience and assumptions were enough for him to form a reasonable

belief that Mathis was in the Glastonbury house when he and his team

members entered Cain's house.  Binding precedent, including *Hardin*,

clearly established that the officers needed some evidence that Mathis was

present at the house before they search it.  *Hardin*, 539 F.3d at 416.  Thus,

summary judgment should be denied on the issues of whether Rinehart

conducted an illegal search and whether he has a right to qualified immunity for that search.

## C.

Rinehart next argues that he did not unlawfully seize Cain.  He cites *Michigan v. Summers*, which held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981).  Rinehart also relies on *Cherrington v. Skeeter*, in which the Sixth Circuit seemingly extended the *Summer's* rule to arrest warrants.  344 F.3d 631, 638 (6th Cir. 2003).  The *Cherrington* court said, "[T]he police have the limited authority to briefly detain those on the scene, even wholly innocent bystanders, as they execute a search or arrest warrant."  *Id*.  This statement in *Cherrington* was dictum.  *Gomez v. United States*, 601 F. App'x 841, 847 (11th Cir. 2015).  Even so, the conclusion that the *Summers* rule applies to arrest warrants has prevailed in the Sixth Circuit.  *United States v. Ocean*, 564 F. App'x 765, 770 (6th Cir. 2014) (reiterating *Cherrington's* language about searches incident to an arrest warrant).

But the *Summers* rule allowing for detention of an occupant applies to "a proper search."  *Summers*, 452 U.S. at 705; *see also Jacobs v. City of*

*Chicago*, 215 F.3d 758, 772 (7th Cir. 2000) ("[W]here a search is illegal and not supported by probable cause, the justification for using the search as the foundation for the seizure disappears because it was the connection of the individual with a location suspected of harboring criminal activity that provided the reasonable basis for the seizure."); *Marks v. Clarke*, 102 F.3d 1012, 1032 (9th Cir. 1997) (finding that *Summers* did not authorize detention of occupants "in furtherance of an illegal search").

Thus, the question of whether Rinehart and the task force's detention of Cain complied with the Fourth Amendment is tied to whether they had a reasonable belief that Mathis was in the Glastonbury home at the time of the search. And *Summers* is clearly established that "the limited authority to detain the occupants of the premises" depends on "a proper search." 452 U.S. at 705. As noted, the Court finds that summary judgment on Cain's illegal search claim should be denied. Thus, summary judgment also should be denied on the issues of whether Rinehart conducted an illegal seizure and whether he has a right to qualified immunity for that seizure.

## D.

Rinehart contends that neither he nor any officer on the task force used excessive force against Cain. Whether an officer used excessive

force is fact specific and based on the totality of circumstances, and "is gauged on what a reasonable officer would have done, given the knowledge he had at the time." *Smith v. City of Wyoming*, 821 F.3d 697, 717 (6th Cir. 2016). The Fourth Amendment is not violated by every "push or shove," and the assessment of the reasonableness of the force must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation and quotation marks omitted). Even when a plaintiff has been unlawfully arrested, she must raise a genuine dispute of fact to support her claim of excessive force. *Smith*, 821 F.3d at 714-718 (granting summary judgment of plaintiff's excessive force claim despite finding that her arrest was unlawful).

In support of his motion for summary judgment, Rinehart argues that the officers had good reason to tackle and handcuff Cain, citing Cain's deposition testimony that officers are generally afraid of him because of his violent criminal history. ECF No. 32, PageID.124-125; ECF No. 32-4, PageID.169-171. Rinehart also notes Cain's testimony that the officers immediately lifted him off the ground after they handcuffed him. *Id.* In his

response, Cain alleges that members of the task force assaulted him, but he denied in his deposition that he suffered any significant injury.  ECF No. 32-4, PageID.175; ECF No. 33, PageID.185.  And Cain points to no facts and makes no argument in his response about the amount of force used under the totality of circumstances.  ECF No. 33.  Because Cain presents no counter evidence, Rinehart's motion for summary judgment on the excessive force issue should be granted.  *Everson*, 556 F.3d at 496.

### E.

The Court ends this report and recommendation by addressing the implication of some of Rinehart's counsel's questions of Cain during his deposition.  Counsel for Rinehart asked Cain, "Why didn't you just let them search the house?"  ECF No. 32-4, PageID.164.  He also asked Cain to agree that Rinehart would have had probable cause to search the Glastonbury house if Mathis's LEIN showed that he lived there.  *Id*. at PageID.165.  These questions suggest that Cain's rights under the Fourth Amendment were insubstantial and that his refusal to waive them was suspicious or unreasonable.

As noted, "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Payton*, 445 U.S. at 585.  Stated differently, "when it comes to the Fourth Amendment, the

home is first among equals." *Fla. v. Jardines*, 569 U.S. 1, 6 (2013). "At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

The record shows that Mathis has struggled with drug addiction, has been in and out of jail, and has been homeless. Even though Mathis reported to law enforcement at some point that he lived at the Glastonbury address, Fourth Amendment jurisprudence belies any suggestion that Cain must abide government intrusion into his home every time law enforcement seeks to arrest his nephew. The Constitution demands that officers have evidence to believe that Mathis is inside Cain's home before seizing Cain and forcing their way in. All citizens enjoy these bedrock rights.

## IV. Conclusion

The Court **RECOMMENDS** that Rinehart's motion for summary judgment, **ECF No. 32**, be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment should be granted as to Cain's excessive force claim, but otherwise denied, leaving Cain's claims that Rinehart committed an unconstitutional search and seizure, as well as Cain's state law claims (for which Rinehart did not move for summary judgment).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: May 11, 2021

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,
any party may serve and file specific written objections to this Court's
findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72(b)(2).  If a party fails to timely file specific objections, any further appeal
is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And
only the specific objections to this report and recommendation are
preserved for appeal; all other objections are waived.  *Willis v. Secretary of
HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"
etc., and **must specify** precisely the provision of this report and
recommendation to which it pertains.  Within 14 days after service of
objections, **any non-objecting party must file a response** to the
objections, specifically addressing each issue raised in the objections in the
same order and labeled as "Response to Objection #1," "Response to
Objection #2," etc.  The response must be **concise and proportionate in
length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager